Joseph E. Lewis and Mary E. Lewis, Husband and Wife v. Commissioner.
Lewis v. Commissioner
Docket No. 48760.
United States Tax Court
T.C. Memo 1955-187; 1955 Tax Ct. Memo LEXIS 159; 14 T.C.M. (CCH) 740; T.C.M. (RIA) 55187; June 30, 1955
Tom B. Rhodes, Esq., for the petitioners. Graham R. E. Koch, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $380.04 in income tax of the petitioners for 1949. The issue for decision is whether a deduction under section 23(e) or (k) is allowable as a result of a used car transaction in which Joseph endeavored to aid a friend. Findings of Fact The petitioners filed a joint return for 1949 with the collector of internal revenue for the second district of Texas. Charles Phillips of the Phillips Motor Company of Dallas sold a used car, a 1947 Hudson, to McMillan shortly prior to July 19, 1948. McMillan made a down payment on the purchase and took possession of the car but never received *160 title to it. Phillips' application for financing on the car for McMillan was rejected by Joseph's employer, the G.F.C. Corporation, because it regarded McMillan as a poor risk. McMillan promptly absconded with the car. Phillips told Joseph what had happened and asked Joseph to help him recover the car. Joseph volunteered, without a profit motive of any kind, to help Phillips. Information was obtained in some way not disclosed by the record that the car might be in California. Joseph enlisted his brother Frank, who lived in Los Angeles, in the effort, forwarded the information to him and Frank located McMillan and the car in California. Frank repossessed the car upon authorization from Phillips, placed it in storage and was reimbursed for the costs of the repossession amounting to $62.93. Frank then obtained bids for the car and was instructed by Phillips to sell the car for the highest bid which he had reported. Phillips forwarded title for the car in blank to Frank in the summer of 1948 and Frank sold the car. Phillips was fully informed of all of the circumstances up to this point and gave all of the instructions for the action taken, except that the record is conflicting as *161 to when he first learned that his agent in California, Frank, was the brother of Joseph who had been communicating with Frank on behalf of Phillips. Joseph does not know when or at what price Frank sold the car. The record does not show what compensation, if any, Frank was to receive for his services. Frank never remitted any amount to Joseph or Phillips although Joseph demanded that he pay over the proceeds of the sale of the car. Joseph paid to or for the benefit of Phillips $1,112.93 on February 23, 1949 to compensate Phillips for his loss which resulted from the acts of Joseph's brother Frank. The bid which Phillips accepted was somewhat in excess of $1,112.93. Joseph knew from past experience that Frank was not always reliable but that he had handled satisfactorily several somewhat similar transactions. Joseph went to Los Angeles in March 1949, found that Frank was in trouble with a bonding company as a result of his misappropriation of the funds of his employer, a finance company, and arranged for Frank to make restitution to the finance company through monthly payments of $29. Frank was employed most of the time during 1949 but had no property. He never repaid $800 which *162 Joseph had loaned him prior to 1949 and he never reimbursed Joseph for any part of the amount which Joseph paid to Phillips. Joseph never took any steps to force Frank to repay him any of the amount owed. The petitioners claimed a deduction on their return for 1949 of $1,212.93 [$1,112.93] as a bad debt due from Frank Lewis. The Commissioner disallowed the deduction in determining the deficiency. Opinion MURDOCK, Judge: The petitioners claim the right to deduct the $1,112.93 as a loss incurred in trade or business, incurred in a transaction entered into for profit, arising from theft or from a debt which became worthless. See section 23(e) and (k). Joseph was the only witness who testified in regard to the Phillips' transactions and his testimony shows that he did not enter into those transactions for profit and he incurred no loss in his trade or business. Neither (1) nor (2) of section 23(e) of the Internal Revenue Code of 1939 has any application, despite some suggestion in the record that Joseph had in mind possible good will for his employer when he volunteered to help Phillips. Section 23(e)(3) allows a deduction for a loss which arises from theft. Phillips might have *163 had a loss from theft (embezzlement) had Joseph not paid him the $1,112.93 but there was no theft or embezzlement from Joseph and he was not the responsible victim of theft within the meaning of section 23(e)(3). The evidence fails to disclose any legal obligation upon the part of Joseph to pay anything to Phillips and a fair inference might be that his real purpose was to keep his brother out of further trouble. Cases where a third party was legally liable for the act of a thief are not in point. However, Frank owed Phillips, his principal, the net proceeds of the sale of the car, and when Joseph paid Phillips $1,112.93 the debt from Frank became payable to Joseph, except as it might exceed that amount. The debt was a nonbusiness debt since it was not any part of a business regularly carried on by Joseph. He admits that he does not know the amount for which Frank sold the car and thus the record does not show the amount which Frank owes. Joseph testified that he paid Phillips less than the highest bid for the car which was reported by Frank and accepted by Phillips. It might be proper to fix some amount, under the principle of Cohan v. Commissioner, 39 Fed. (2d) 540, *164 to represent the amount of the debt for the purpose of a deduction. However, the evidence does not show that the debt, regardless of amount, became worthless during 1949. Joseph knew all about his brother long before 1949. He had charged off as worthless in 1948 a loan of $800 which he had theretofore made to his brother. No improvement in the financial condition of the brother during 1949 has been shown. Joseph knew at the time he paid Phillips that his brother would never pay him back and he made no real effort to make him pay. C. B. Hayes, 17 B.T.A. 86; Max Baumann, 8 B.T.A. 107. It can not be found on this record that a debt, which had value at the time Joseph became the creditor by a voluntary payment to Phillips, thereafter during 1949 became worthless. Ezra H. Jones, 13 B.T.A. 1271. Decision will be entered for the respondent.